**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

                             :

FEDERAL ENERGY REGULATORY
COMMISSION,                              :

           Petitioner,           :

          v.                  :    Case No. 1:12-mc-00352-DAR

J.P. MORGAN VENTURES ENERGY     :
CORPORATION,

                              :

          Respondent.        :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM IN OPPOSITION TO PETITION OF THE
FEDERAL ENERGY REGULATORY COMMISSION SEEKING
AN ORDER COMPELLING THE PRODUCTION OF PRIVILEGED
DOCUMENTS BY J.P. MORGAN VENTURES ENERGY CORPORATION**

This case involves a narrow, technical dispute over the scope of the attorney-client privilege.  In the course of an ongoing and non-public investigation, J.P. Morgan Ventures Energy Corp. ("JPMVEC" or "Respondent") has responded in good faith to document requests by the Federal Energy Regulatory Commission ("FERC" or "the Commission"), and has produced hundreds of thousands of pages of information.  The investigation remains in the fact-finding stage, and FERC has made no determination that Respondent engaged in misconduct.  Respondent is cooperating fully with the investigation.  Under the familiar and well-established doctrine of attorney-client privilege, however, Respondent has the right to decline to provide communications that solicit, repeat, or discuss the advice of its attorneys.  The Commission does not disagree that Respondent has that right; the only disagreement between the parties involves the scope of the right, and its application to the facts of this case.

The Commission takes no issue with the hundreds of thousands of pages of responsive information Respondent has produced; its sole objection is to Respondent's determination to raise a claim of attorney-client privilege as to twenty-five emails ("the Emails").  Those Emails were sent after the start of the Commission's investigation; at the time, Respondent had retained outside counsel, and both outside and in-house attorneys were actively involved in responding to the investigation.  As described in greater detail on an email-by-email basis in the Krupka Affidavit, each of the Emails relates to the advice of counsel with respect to the investigation— *not* the adoption of the bidding practices under investigation.  Even the redacted versions make this abundantly clear: many include counsel as recipients or specifically state that the sender "spoke with" counsel or counsel "advised" a particular course of action.  The only possible use the Commission could make of the Emails would be to peer into the details of Respondent's legal strategy.  That, of course, is what the attorney-client privilege prevents.

Because Respondent is confident that the contents of these emails merit protection under the attorney-client privilege, Respondent is submitting, together with this memorandum, copies of the twenty-five disputed Emails for *in camera* inspection by the Court.  Counsel for Respondent is available, at the pleasure of the Court, for an *in camera* examination.  Respondent is also submitting, for the Court's *in camera* review, an affidavit that provides a detailed explanation of the factual basis for Respondent's privilege determination.  *See* Declaration of C. Krupka ("Krupka Decl.").[1]  These materials demonstrate that the twenty-five disputed Emails

---

[1]  Exhibits A-L to the Krupka Declaration consist of unredacted versions of email strings for the Court's *in camera* review and are hereafter referred to as "Exhibits" A-L.  For the Court's convenience, these unredacted email Exhibits include clear overlays indicating a) the redacted text that FERC claims is not privileged and seeks to have produced pursuant to this action (transparent yellow sections of overlay) and b) the redacted text that is not in dispute in this action as it has not been challenged by FERC (opaque black sections of overlay).

seek, solicit, repeat, or discuss the advice of counsel.  Because the Emails are therefore protected by the attorney-client privilege, the Commission's petition must be denied.

### Preliminary Statement

This dispute arises in the context of a non-public investigation being conducted by FERC Enforcement Staff ("Enforcement Staff" or "the Staff") into bidding practices in the California and Midwestern energy markets.  Respondent has cooperated fully with the investigation, and thus far has produced nearly 500,000 pages of information in response to requests made by the Enforcement Staff.  Many more documents may be produced before the investigation is complete. The Commission has *not* made *any* finding that Respondent or its employees have engaged in any misconduct.  And, in fact, no misconduct occurred.

As is typical in *all* litigation, particularly in cases requiring a large document production, counsel for Respondent have taken steps to avoid inadvertent production of privileged materials. *See* Krupka Decl. ¶ 8.  It is well understood that attorneys have an ethical obligation to preserve the attorney-client privilege.  The privilege "rests at the center of our adversary system." *United States v. Philip Morris*, 314 F.3d 612, 618 (D.C. Cir. 2003).  It is "the oldest of the privileges for confidential communications known to the common law," and its "purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981).  Attorney-client privilege is routinely invoked—and must be scrupulously honored—in proceedings before administrative agencies, including in proceedings before the Commission.

Because it is well settled that even inadvertent production of a privileged document risks waiving the privilege—not only for that document, but also for *other* documents addressing the

same subject[2]—counsel for Respondent took a conservative approach to *initial* disclosures, retaining any documents as to which there was a possible claim of privilege.   Krupka Decl. ¶ 8. This, again, is commonplace:  This approach avoids mistaken production of privileged material over the course of a lengthy production, and also avoids delay that would result if the entire document production had to await a complete assessment of potential claims of privilege.   Once Respondent determined that materials it had retained were *not* subject to a valid claim of privilege, it promptly produced them.   *See id.*; *see also* Memorandum in Support of Petition by Federal Regulatory Commission for an Order to Show Cause Why This Court Should Not Enforce Subpoenas for Production of Documents (Dkt. 1) ("Mem.") at 1-2.

Unable to explain why the particular twenty-five Emails that it seeks should be disclosed, the Commission burdens this Court with a lengthy discussion of why, in its view, Respondent should not have initially withheld a separate group of twenty-eight emails that Respondent *has* now produced, and that Respondent no longer views as potentially privileged.   In the Commission's view, the fact that counsel *appropriately* produced these twenty-eight emails after a fuller review of the privilege issues is somehow proof that counsel acted *in*appropriately in deciding not to disclose (based on the same review) the twenty-five privileged Emails the Commission now seeks.   *See* Mem. at 2.   But the opposite is true:  Respondent withheld these twenty-five Emails precisely because Respondent determined that they are subject to a valid claim of attorney-client privilege.   The fact that Respondent produced twenty-eight other, non-privileged emails promptly upon determining that they could properly be produced illustrates Respondent's good-faith efforts to comply in a timely fashion with the Commission's document

---

[2]   *See, e.g.*, *In re United Mine Workers of Am. Emp. Ben. Plans Litig.*, 159 F.R.D. 307, 310 (D.D.C. 1994).

requests, while also safeguarding potential claims of privilege.  It provides no basis to burden this Court with this garden-variety discovery dispute.

As this case comes to this Court, the *only* abusive litigation tactic supported by the record is the Enforcement Staff's decision to disclose its incomplete non-public investigation by filing this petition.  The Enforcement Staff evidently hoped that its effort to publicize an ongoing investigation might cause Respondent to abandon the protection of the privilege, to which all other litigants are entitled.[3]  It has not.

Apart from the Commission's inappropriate disclosure, this is a simple case.  The standards that govern Respondent's claim of privilege are well-established and straightforward.  Attorney-client privilege is intended to "'protect[] confidential communications made between clients and their attorneys when the communications are for the purpose of securing legal advice or services.'"  *Cobell v. Norton*, 213 F.R.D. 16, 23 (D.D.C. 2003) (quoting *In re Lindsey*, 148 F.3d 1100, 1103 (D.C. Cir. 1998)).  An attorney's provision of legal advice will also be protected if it is "'based, in *part at least*, upon a confidential communication to the lawyer from the client.'"  *Loftin v. Bande*, 258 F.R.D. 31, 34 (D.D.C. 2009) (quoting *In re Sealed Case*, 737 F.2d

---

[3]   In the normal course, when the Enforcement Staff seeks a subpoena in the context of an ongoing non-public investigation, it does not publicly disclose detailed information about the underlying investigation itself.  That makes good sense; the mere existence of an investigation can stigmatize its subject, even if investigations often end in a finding that the subject engaged in no wrongdoing.  The Commission has therefore stated that, in order to mitigate "harm from disclosure of the subject's identity," the existence of a non-public investigation will not be disclosed "until after all the following have occurred: (1) [Enforcement S]taff has completed its fact-finding process, (2) [Enforcement S]taff has presented the subject matter of the investigation with its preliminary findings, (3) the subject has had a chance to respond in writing to the facts and arguments in staff's preliminary findings, and (4) staff has had a full opportunity to review and analyze the subject's response."  *Enforcement of Statutes, Regulations, and Orders*, 134 FERC ¶ 61,054 at P 17 (2011).  None of those four pre-conditions of disclosure has occurred in this case.  And there was no other basis for the Commission to depart from its usual approach in this case.

94, 99 (D.C. Cir. 1984)) (emphasis in original).  And, when the client is a corporation, a claim of privilege will "not be defeated by some limited circulation beyond the attorney and the person within the group who requested the advice."  *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 863 (D.C. Cir. 1980).   Application of these principles to this case yields a straightforward conclusion:  Even the redacted versions of the Emails—which reveal that the sender "spoke to" counsel or that counsel "advised" a particular course of action—make it abundantly clear that the Emails solicit, provide, repeat, or discuss legal advice.  The unredacted versions, provided for *in camera* inspection by the Court, leave no room for doubt.  Respondent properly withheld the Emails as attorney-client privileged.

## Discussion

The Commission raises a volley of objections to Respondent's claim of privilege, all meritless.  Much of the Commission's submission focuses on emails that Respondent has *already* disclosed; the Commission suggests that, because those emails are not privileged, the twenty-five Emails it seeks are not privileged as well.   The Commission also raises a red herring, misleadingly suggesting that Respondent believes the Emails are privileged merely because an attorney is included as an addressee.  Respondent believes nothing of the kind.  These Emails are privileged because they solicit, provide, repeat, or discuss an attorney's legal advice.  In fact, it is the Commission, not Respondent, that seeks to advance a facile, primary recipient-based view of privilege:  The Commission suggests, incredibly, that an email cannot fall within the attorney-client privilege if an attorney is copied rather than appearing as a direct recipient of the email. *See* Mem. at 27-29.  And the Commission contorts the attorney-client privilege in other ways as well.  In the Commission's view, communications between corporate decisionmakers discussing the legal advice of the corporation's attorney are virtually never privileged.  *See id.* at 31-33.

Under the rule the Commission would have this Court adopt, it would follow that, if an attorney provided otherwise-privileged legal advice to a corporation's chief executive, the privilege could be vitiated simply because the chief executive discussed the advice—to criticize it, endorse it, or even to determine how best to respond—with the head of finance or the Chairman of the Board. Such a rule would be totally unworkable in practice, and is not the law.

**A.     The Commission's Reliance on Emails Already Disclosed by Respondent Is Irrelevant and Misplaced**

Much of the Commission's submission focuses on emails that have already been disclosed.  *See, e.g.*, Mem. at 28, 33-34.  Whether those emails might have been subject to a valid claim of attorney-client privilege, however, is irrelevant to this case, which involves twenty-five *separate* Emails that Respondent has not disclosed, and as to which Respondent continues to assert attorney-client privilege.  In an attempt to make this digression somehow relevant, the Commission states that, "[s]ince JP Morgan has knowingly advanced privilege claims in 28 obviously non-privileged emails, there is no reason to credit its privilege claims in the remaining 25 Emails."  *Id.* at 25.  Because Respondent has provided the Court with the disputed Emails, however, there is no need for the Court to take Respondent's representations on faith.  And, even more fundamentally, the record does not bear out the Commission's suggestion that Respondent has somehow been less than forthcoming.

As already explained, this case involves a rolling production of hundreds of thousands of pages of information to the Commission.  Such a large document production raises complicated questions of timing and logistics, as counsel cannot possibly be expected to conduct an in-depth privilege analysis of every document that is produced.  Here, counsel for Respondent did not review all of the documents relevant to FERC's requests on a single occasion, but rather reviewed the documents as they were collected, with an eye towards providing as expeditious a

response as possible to the Commission.  Krupka Decl. ¶¶ 8-10.  As a result, in order to ensure that the Company did not waive any applicable privileges, certain documents were provisionally marked "privileged" when counsel was unable to ascertain, based on the incomplete information available to it at the time, whether documents were indeed privileged.  *Id.* ¶¶ 8-9.  For example, Respondent was particularly careful with respect to emails involving compliance personnel who work closely with or at the direction of lawyers in connection with this investigation.  *Id.* ¶ 9.

Respondent also initially withheld many emails that appeared in a single email chain with other emails whose contents Respondent believed were subject to a valid claim of privilege out of concern that revealing even a portion of the email chain could waive a claim of privilege as to the entire subject matter of that email chain.  *See id.* ¶ 18; *see also* Declaration of T. Olson (Dkt. 1), Ex. 5 at 45 (Email from W. Scherman to T. Olson (May 7, 2012)).  Respondent sought to confer with the Enforcement Staff regarding this and other issues, and was initially rebuffed. Krupka Decl. ¶ 16.  When the Enforcement Staff finally did provide assurance that it would not pursue such an argument, Respondent made additional disclosures.  *See id.* ¶ 18.

Counsel did not and still does not consider these designations "final," and they will not become final until all of the relevant documents have been collected and reviewed, and the relevant individuals have been questioned.  Krupka Decl. ¶ 12.  As occurs commonly in FERC investigations, where such rolling production may occur over months, if not years, counsel for Respondent is continually updating its privilege determinations as additional information becomes available.  And, whenever it becomes clear that a document is not privileged, counsel for Respondent has disclosed it.  Thus, although Respondent initially withheld the twenty-eight emails referenced in the Commission's petition, it has now provided all of those emails to the Commission.  Although the Commission suggests that this careful, well-considered, and ordinary

practice is somehow nefarious, Respondent's willingness to update its disclosures in light of its evolving understanding of the facts that bear on its privilege designations is, in fact, compelling evidence of its willingness to work, in good faith, to provide the Commission with timely disclosures while nonetheless preserving valid claims of attorney-client privilege.

**B.      The Narrow View of Attorney-Client Privilege Advanced by the Commission Is Unprecedented and Wrong**

When the Commission's petition finally does address the Emails at issue here—rather than emails that *nobody* contends are subject to attorney-client privilege—the Commission advances a cramped theory of attorney-client privilege that is without precedent or support.  The Commission contends that advice from an attorney to a client is protected only in a "narrow category" of cases.  Mem. at 29.  And the Commission suggests that, in the corporate setting, communications between non-lawyers are not privileged except in a "specific, narrow circumstance not present here: one non-attorney sharing *specific, privileged documents* (such as legal memoranda) with another."  *Id.* at 31-32.  Under the Commission's theory, advice rendered by a corporation's lawyer would become subject to full discovery the instant two employees within the corporation discussed the advice in order to determine how best to respond.  That is not the law.

It is well established that advice from a lawyer to a client may be protected by the attorney-client privilege.  *See, e.g.*, *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 254 n.25 (D.C. Cir. 1977) ("As applied in the federal courts . . . the privilege has consistently included communications of the attorney to the client as well as vice versa.").  This is true for two reasons:  First, an attorney's advice may reveal the content of confidential communications from the client.  And, second, "independent of the content of any client communication, legal advice given to the client should remain confidential."  *United States v.*

*Amerada Hess Corp.*, 619 F.2d 980, 986 (3d Cir. 1980); *see also Upjohn*, 449 U.S. at 390 ("[T]he privilege exists to protect . . . the giving of professional advice to those who can act on it," in addition to the confidentiality of communications from a client to an attorney).  Courts in this Circuit have therefore explained that an attorney's advice is privileged so long as it is "based on" a client's confidential communication, even "in part."  *Loftin*, 258 F.R.D. at 33-34 (internal quotation marks omitted).  Courts have specifically rejected the contention that the advice must actually "disclose" the confidential communication of the client in order to benefit from the privilege.  *Id.* (alteration omitted).

Furthermore, legal advice does not lose its privileged status merely because it is shared and discussed by a small group of employees within a corporation.  *See, e.g.*, *Coastal States*, 617 F.2d at 863; *Covington & Burling v. Food & Nutrition Serv. of U.S. Dept. of Agric.*, 744 F. Supp. 314, 323 (D.D.C. 1990); *SmithKline Beecham Corp. v. Apotex Corp.*, 232 F.R.D. 467, 477 (E.D. Pa. 2005); *Santrade, Ltd. v. Gen. Elec. Co.*, 150 F.R.D. 539, 545 (E.D.N.C. 1993).  This makes good sense:  Although a single, human client may be capable of silently mulling over the advice of an attorney, a corporation cannot do so.  For a corporation to make an important decision, key employees must discuss the relevant issues; subordinate employees must be free to provide information and advice to their superiors; and managers must be free to consult each other about sensitive decisions that may affect the corporation as a whole.  Different employees may understand different aspects of the corporation's business—the chief executive, head of finance, and head of public relations may take an entirely different view of a problem, based on their different institutional roles.  The corporation cannot function if these parts are not able to work together as a coherent whole.

Courts have therefore recognized that discussions between relevant decisionmakers *about* legal advice may be protected by attorney-client privilege.  "Management should be able to discuss amongst themselves the legal advice given to them as agents of the corporation with an expectation of privilege." *McCook Metals L.L.C. v. Alcoa Inc.*, 192 F.R.D. 242, 254  (N.D. Ill. 2000); *see also Wilstein v. San Tropai Condo. Master Ass'n*, 189 F.R.D. 371, 379 (N.D. Ill. 1999) (same).  Thus, "when the client is by nature a group, as is true of both the government and corporations, the courts have agreed that the privilege should not be defeated by some limited circulation beyond the attorney and the person within the group who requested the advice." *Covington & Burling*, 744 F. Supp. at 323 (internal quotation marks and alterations omitted); *see also Coastal States*, 617 F.2d at 863.  To the contrary, employees "share[ ] the attorney-client privilege with each other," and are free to discuss and relay advice without waiving the attorney-client privilege.  *Evans v. Atwood*, 177 F.R.D. 1, 6 (D.D.C. 1997); *see also* Edna Selan Epstein, The Attorney-Client Privilege and the Work-Product Doctrine 86 (5th ed. Vol. I, ABA 2007).  Similarly, communications among employees *preparing* to solicit advice from an attorney also fall within the ambit of the attorney-client privilege; a contrary rule would "undermine the purpose of the attorney-client privilege." *United States v. Chevron Texaco Corp.*, 241 F. Supp. 2d 1065, 1077 (N.D. Cal. 2002).

Thus, in *FTC v. GlaxoSmithKline*, the Court held that the attorney-client privilege extended to an attorney-prepared legal document that was sent to the client and then forwarded by the client to independent contractors.  The Court explained that, in the corporate setting, privileged communications retain their privileged character so long as they are "'distributed on a 'need to know' basis or to employees that were 'authorized to speak or act' for the company'." 294 F.3d 141, 147 (D.C. Cir. 2002) (quoting *Coastal States*, 617 F.2d at 863). The Court

explained that the "Company's burden is to show that it limited its dissemination of the documents in keeping with their asserted confidentiality, not to justify each determination that a particular employee should have access to the information therein." *Id.* When determining whether a corporation asserting privilege has satisfied this burden, a corporation enjoys a presumption that it has appropriately limited circulation to those employees with a need to know: "We do not presume . . . that any business would include in a restricted circulation list a person with no reason to have access to the confidential document—that is, one who has no 'need to know.'" *Id.* at 148.

*In re PEPCO Employment Litigation*, Civ. A. No. 86-0603, 1992 WL 310781 (D.D.C. Oct. 2, 1992), is similarly instructive. In that case, the Court upheld a claim of privilege regarding a corporation's internal memorandum "describing an action that PEPCO's outside counsel took regarding a charge filed with a governmental agency." *Id.* at *5. Although the internal memorandum was not drafted by an attorney—and was a communication neither to nor from an attorney—it was privileged because "production of this document would reveal the actions counsel took on behalf of PEPCO, which in turn would reveal PEPCO's communication requesting that action." *Id.* The memorandum therefore rested "in significant and inseparable part" on earlier, confidential client communication to the attorney, and had to be withheld in order to protect those communications from disclosure. *Id.*

Cases from outside this Circuit have also applied these principles in analogous situations. In *Southeastern Pennsylvania Transporation Authority v. Caremarkpcs Health, L.P.*, the Court upheld a claim of attorney-client privilege as to several internal emails between business personnel, explaining that an "[attorney's] affidavit proclaiming that the contested e-mails reveal her legal advice to her clients is sufficient to establish that they were privileged, regardless of

whether or not [the attorney] was the sender." 254 F.R.D. 253, 261-62 (E.D. Pa. 2008). Similarly, *In re New York Renu with Moistureloc Product Liability Litigation*, No. MDL 1785, 2008 WL 2338552, at *14 (D.S.C. May 8, 2008), held that an email from a non-lawyer within a company to another non-lawyer within the company was covered by attorney-client privilege because it was predicated on earlier advice of counsel and thus "reflects legal advice once removed." *See also In re Grand Jury 90-1*, 758 F. Supp. 1411 (D. Colo. 1991) (sustaining claim of privilege as to letter from company president to board of directors discussing legal advice); *SCM Corp v. Xerox Corp.*, 70 F.R.D. 508, 518 (D. Conn. 1976) (sustaining claim of privilege as to discussion between non-lawyer executives regarding "the recent recommendation of their corporate counsel concerning licensing policy and antitrust implications"). As these cases demonstrate, there is simply no basis for the cramped view of attorney-client privilege advanced by the Commission.

**C.**    **The Emails Sought by the Commission Are Privileged Because They Solicit, Provide, Repeat, or Discuss Legal Advice**

Applying these well-established principles to the facts of this case, the disputed Emails are subject to a valid claim of attorney-client privilege because they solicit, provide, relay, or discuss the advice of an attorney.

Attorneys—both outside counsel and in-house counsel—are copied on thirteen of the disputed Emails. The Commission is correct that this fact, alone, is not dispositive; the fact that an attorney is copied on an email does not *automatically* render the email privileged. *See* Mem. at 27-29. Yet the fact that an attorney is copied on an email is certainly *relevant* to the privilege determination, and not unfavorably as the Commission appears to believe. *See, e.g.*, *In re New York Renu*, 2008 WL 2338552, at *9 ("[G]iven the law providing that an attorney need not be a recipient at all for the privilege to attach, it must surely be the case that a "cc" to an attorney can

13

qualify for the privilege."); *cf. Eutectic Corp. v. Metco, Inc.*, 61 F.R.D. 35, 37-38 (E.D.N.Y.1973) (finding documents privileged in part because counsel "did receive either a copy of each document or the contents thereof in more summary fashion").  There is no legal rule that *denies* the privilege to communications in which counsel is "merely" copied.  A lawyer does not have to be listed in the "to" field—as the direct recipient—of an email for the email to be read, in context, as a solicitation of legal advice.  Rather, an attorney will often be copied for no reason other than that the sender wishes to provide information to the attorney in order to facilitate the rendering of legal advice or implicitly invite the attorney's views regarding the subject discussed.

Further, the non-lawyers included on the Emails constitute a limited group of employees with an obvious "need to know" about the investigation and counsel's legal advice.  *Coastal States*, 617 F.2d at 863; *see* Krupka Decl. ¶ 25.  Without exception, they are either executives at JPMVEC or an affiliate, or personnel working in the Legal and Compliance Department with access to information critical for outside and in-house counsel to render informed legal advice relating to this investigation.  *See* Krupka Decl. ¶ 25.  This is precisely the type of limited group of employees that courts hold may distribute and discuss privileged communications without vitiating the privilege, or from whom relevant facts may be sought to procure legal advice.  *See GlaxoSmithKline*, 294 F.3d at 147-48.

An examination of the specific Emails at issue, moreover, reveals that they include information regarding legal advice from counsel.  *Even the redacted versions of the Emails make this amply clear.*  The Emails frequently refer to in-house or outside counsel by name and indicate that the redacted portion of the email recounts advice provided by the attorney.  And, even where that is not the case, an examination of the context in which these communications were made establishes that they invariably solicit, provide, relay, or discuss legal advice.

1.      Emails Reproduced at Exhibits C and D

The Commission is seeking unredacted versions of five emails, all of which are included in an email chain that begins with an email from a Managing Director in Compliance, Armand Nakkab.  Even the redacted version of this communication makes plain that it relayed legal advice from outside counsel to a limited group of key personnel within the corporation.  The redacted version states that Nakkab "spoke to Catherine Krupka" and that "[s]he advised." Catherine Krupka was outside counsel responsible for assisting Respondent with the subject matter of this investigation; in her affidavit, she confirms that the email relays the content of privileged telephone conversations that she had with Nakkab.  *See* Krupka Decl. ¶ 28.  The email is addressed to three business executives with responsibility for the subject matter of the investigation, and two additional compliance personnel involved in responding to the investigation are copied.

Two attorneys—Krupka and Diane Genova, the Global Deputy General Counsel for JPMorgan's Investment Bank—are also copied on the email.  Nakkab's determination to copy those attorneys is an implicit invitation for them to confirm that his understanding of their advice is correct.  *See* Krupka Decl. ¶ 28.  The email thus also solicits further advice, even as it relays advice already provided.

This initial email lays the foundation for Respondent's claim of privilege as to the subsequent emails in the same chain.  The subsequent emails were all sent within, at most, a few days of the initial email, during an active period in the investigation involving extensive discussions between business employees and their legal advisers.  *See* Krupka Decl. ¶¶ 29-32. Each of these specific emails is subject to a valid claim of attorney-client privilege:

a.  The email reproduced at Exhibit C includes an email from Blythe Masters, the head of J.P Morgan's Global Commodities Group, immediately following this initial email.  The email is addressed to three individuals—two business executives, and a Managing Director in Compliance—responsible for the investigation, and concerns potential commercial responses to the investigation, in light of the legal advice provided.  *See* Krupka Decl. ¶ 29.  Two attorneys are copied, so that they may provide legal advice on the issue or relate legal advice previously provided.  *Id.*  The email is privileged because it solicits legal advice in connection with the investigation.

b.  The email reproduced at Exhibit C also includes an email from Blythe Masters to Francis Dunleavy, another business executive with responsibility for the investigation.  The email concerns the proper response to prior privileged communications, in which attorneys provided advice regarding the investigation.  *See* Krupka Decl. ¶ 30.  This email thus reflects discussions between two business executives regarding legal advice rendered by Respondent's attorneys.  Such discussions are privileged.  *See supra* pp. 10-13.

c.  The email reproduced at Exhibit D includes an email from Blythe Masters to two business executives, as well as a Managing Director in Compliance.  The email conveys the advice of counsel regarding the response to the investigation, and discusses how best to respond to that advice.  *See* Krupka Decl. ¶ 31.  This is evident even in the redacted version of the email, which demonstrates that this email follows a string of emails sent directly from JPMVEC employees to outside counsel Catherine Krupka, including an email stating, "if Catherine could advise."  This email is privileged as a discussion between key employees regarding legal advice, and because the entire email chain concerns the solicitation of legal advice from outside counsel.

d.  The email reproduced at Exhibit D also inludes an email from Francis Dunleavy, a business executive, to Blythe Masters.   This email followed a series of privileged communications with outside counsel, during which outside counsel was asked to provide legal advice.  In that context, the email references that legal advice and discusses how best to respond to that advice.  *See* Krupka Decl. ¶ 32.  It is privileged because it solicits and discusses legal advice.

All of these emails are predicated upon the initial email relaying the advice of outside counsel, Catherine Krupka, and that email in turn was based on confidential information provided by employees to Ms. Krupka.  The limited discussion of these matters within a select group of key employees does not vitiate the privilege.   *Coastal States*, 617 F.2d at 863. Accordingly, each of these emails was appropriately withheld.

2.   Email Reproduced at Exhibit A

This is an email between Robert O'Connell and Paul Tramonte, both of whom are employed in the Compliance Department.  The attachment in the email is a non-final draft of a document prepared in connection with the investigation that reflects the revisions and recommendations of outside counsel.  *See* Krupka Decl. ¶ 26.  This is evident from the redacted version of the emails, which includes an attachment titled "combined Proposed Response –MISO IMM (Confidential)."  Earlier drafts of these documents, which did not include comments from counsel, have been produced by Respondent in unredacted form.  *Id.*  The drafts attached to this email are privileged because they reflect information obtained by outside counsel from Respondent, as well as advice provided on the basis of that information.

3.      Email Reproduced at Exhibit B

This email is an email from one compliance employee to another, immediately following an email from a compliance employee to Diane Genova, in-house counsel for JPMVEC.  The email to Ms. Genova communicates information to counsel for the purpose of seeking legal advice.   Krupka Decl. ¶ 27.   The email between compliance personnel then discusses the provision of information to counsel in connection with the provision of legal advice, as well as the solicitation of further legal advice from counsel.  *See id.*  This is plain from the redacted version of the emails, which specifically mention "Diane."   The emails are privileged because they relate to the solicitation of legal advice, as well as the provision of confidential information to counsel.

4.      Email Reproduced at Exhibit E

The Commission is seeking two emails from this email chain.  Although not visible in the redacted version of the email, the first email in the chain, sent from a compliance manager to a number of individuals and copying in-house counsel, Ms. Genova, is marked "Privileged and Confidential," and provides all the recipients with a summary of Respondent's effort to assess and respond to the investigation.  *See* Krupka Decl. ¶ 33.  The summary was prepared in consultation with Ms. Genova and conveys advice of counsel.  *Id.*  By copying Ms. Genova on this email, the sender was also providing her with information necessary to facilitate her provision of legal advice and to solicit advice regarding the issues presented in the summary. The subsequent email from Blythe Masters reacts to the summary; in-house counsel is copied in order to seek advice regarding the issue.  *Id.*

5.      <u>Email Reproduced at Exhibit F</u>

This is an email between two compliance employees involved in responding to the investigation.   The email provides commentary on legal advice provided by outside counsel during a preceding telephone call.   *See* Krupka Decl. ¶ 34.   This is indicated on the face of the redacted version of the email, which refers to "Catherine's conversation."   The email is privileged because it relates to legal advice and the gathering of information in order to obtain legal advice.

6.      <u>Email Reproduced at Exhibit G</u>

The Commission is seeking four emails from this email chain; all four are emails between compliance personnel.   The email follows a conversation with outside counsel in which outside counsel directed these compliance personnel to collect information necessary to provide legal advice.   *See* Krupka Decl. ¶ 35.   The emails involve the subsequent efforts of compliance personnel to obtain this requested factual information, which was later provided to outside counsel for the provision of future legal advice.   *Id.*   The emails are privileged because they relate to the gathering of information in connection with the solicitation of legal advice.

7.      <u>Email Reproduced at Exhibit H</u>

This is an email from a compliance manager to business executives; among others, in-house counsel Diane Genova is copied on the email.   The email follows up on a conference call with legal and compliance regarding a then-upcoming meeting with FERC in connection with the investigation.   Krupka Decl. ¶ 36.   This is evident even in the redacted versions of the emails, which are titled "RE: FERC Meeting."   The email is privileged because it pertains to earlier, privileged communications with counsel and reflects a request for additional legal advice.

8.     Email Reproduced at Exhibit I

This is an email from Blythe Masters to a number of employees involved in the investigation; in-house counsel Ms. Genova is copied.  The email discusses an upcoming meeting with FERC personnel and references a prior, privileged communication regarding the meeting.  *See* Krupka Decl. ¶ 37.  In-house counsel is copied in order to solicit advice regarding the upcoming meeting.   *Id.*   The email is privileged because it reflects privileged communications and solicits legal advice.

9.     Email Reproduced at Exhibit J

This is an email from Blythe Masters to a number of employees involved in the investigation, including in-house counsel Ms. Genova.  Although not visible in the redacted version, the email is marked "Privileged."  The email discusses how to conduct business in light of the investigation and advice provided by legal counsel in that regard.  *See* Krupka Decl. ¶ 38. The email specifically refers to prior, privileged communications.  *Id.*  In-house counsel is included on the email in order to solicit her advice, and advice was also sought from outside counsel as a result of the email.  *Id.*  The email is therefore privileged as a solicitation and discussion of legal advice.

10.    Email Reproduced at Exhibit K

The Commission seeks four emails among business and compliance employees—as well as in-house counsel—all of whom are involved in responding to the investigation.  As even the redacted version makes plain, the emails bear the subject line "Privileged."  The emails relate to Respondent's efforts to retain and collect documents in response to requests from the Commission, as well as the process and strategy involved in doing so.  *See* Krupka Decl. ¶ 39. These efforts were undertaken at the direction of outside counsel, and in-house counsel Diane

Genova is copied on each email.  *Id.*  Even the redacted version of the emails reveal the privileged nature of the communications:  The emails contain the words "outside counsel asked" and "in connection with document retention."  These emails are privileged because they expressly relate to a legal directive from counsel and reflect the provision of information to counsel in order to solicit legal advice.

11.    Email Reproduced at Exhibit L

The Commission seeks two emails in this email chain.  The first is sent by a business executive responsible for the investigation to employees (including compliance personnel) responsible for the investigation.  That email relates to the operation of the business in light of the investigation and legal advice provided by counsel in connection with the investigation.  *See* Krupka Decl. ¶ 40.  It asks compliance to confer with outside counsel regarding the appropriate response to the investigation.  *See id.*  The second email responds regarding these same issues, and copies outside counsel Ms. Krupka, outside counsel Kenneth Raisler, as well as inside counsel Ms. Genova, requesting that they provide input.  *Id.*  Even the redacted version makes clear that these emails are directed to legal staff—indeed, an additional outside lawyer, Kenneth Raisler was intentionally added to this email, given its legal focus.  The redacted version also includes the words "I ask Compliance and Legal."  This email is privileged because it solicits legal advice.

**Conclusion**

Despite JPMVEC's continuing cooperation with FERC's nonpublic and ongoing investigation, Enforcement Staff decided that it would be appropriate to file, publicly, its petition for an order compelling the production of privileged emails.  This premature and unnecessary public disclosure of a non-public investigation (which, it bears emphasis, has resulted in *no*

finding of wrongdoing) is based on an aggressively cramped view of the law that governs one of the oldest privileges known to the law.  Under a proper understanding of the attorney-client privilege, those emails were properly withheld.  The Commission's petition should therefore be denied.

Dated: July 13, 2012

Respectfully submitted,

  /s/ Michele A. Roberts
Michele A. Roberts (D.C. Bar 337998)
William S. Scherman (*pro hac vice* pending)
John N. Estes III (*pro hac vice* pending)
SKADDEN ARPS SLATE
MEAGHER & FLOM LLP
1440 New York Ave. N.W.
Washington, DC 20005
Tel: (202) 371-7000
Fax: (202) 661-8340

*Counsel for Respondent*

## <u>CERTIFICATE OF SERVICE</u>

I, Michele A. Roberts, hereby certify that on July 13, 2012, I caused a true copy of the foregoing Memorandum in Opposition to Petition of the Federal Energy Regulatory Commission Seeking an Order Compelling the Production of Privileged Documents by J.P. Morgan Ventures Energy Corporation to be served through the Court's electronic filing system upon the following:

Thomas P. Olson.
Division of Investigations
Office of Enforcement
Federal Energy Regulatory Commission
888 First Street, N.E.
Suite 51-67
Washington, D.C. 20426

*Counsel for Petitioner*
*Federal Energy Regulatory Commission*

Dated:  July 13, 2012             /s/ Michele A. Roberts    
                                      Michele A. Roberts