**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| FEDERAL ENERGY REGULATORY COMMISSION | ) ) ) ) |
| Petitioner, | ) |
| v. | )   Misc. No. 1:12-mc-00352-DAR |
|  | ) |
| J.P. MORGAN VENTURES ENERGY CORPORATION, | ) ) |
|  | ) |
| Respondent. | ) ) |

**REPLY OF FEDERAL ENERGY REGULATORY COMMISSION**
**IN SUPPORT OF PETITION FOR ORDER TO SHOW CAUSE**

In her July 5 Order to Show Cause, Judge Kollar-Kotelly directed J.P.
Morgan Ventures Energy Corporation ("JP Morgan"), in preparing its filing, to
three controlling decisions by the United States District Court for the District of
Columbia about the law of privilege.[1]

JP Morgan mentions none of them in its Opposition.

One of the decisions that JP Morgan ignores – written by Judge Kollar-
Kotelly herself – captures the essence of this case. There, a party had wrongfully
claimed privilege in statements such as "Sure. Will Thursday at 1 work for you?",
just as JP Morgan has claimed privilege in emails saying "that's ridiculous" or
simply "no." Faced with such claims, the Court said this:

"The Court does not want to minimize the matter. Respondent's
specious privilege claims with respect to these particular documents –

---

[1] *In re Application of Veiga*, 746 F. Supp. 2d 27, 40-41 (D.D.C. 2010); *Zelaya v.
UNICCO Serv. Co.*, 682 F. Supp. 2d 28, 38 (D.D.C. 2010); *Alexander v. FBI*, 192 F.R.D.
42, 45-46 (D.D.C. 2000).

each of which were logged and withheld as separate communications – casts doubt upon Respondent's claims as a whole."[2]

Here, over a period of more than two months (from April 2 to June 4, 2012), senior attorneys at two large law firms,[3] with full knowledge of the facts, told the Office of Enforcement, on multiple occasions, both in writing and in a formal meet-and-confer call, that each of 53 emails sought by Enforcement was privileged. Only when facing the prospect of scrutiny by this Court did JP Morgan begin to abandon its repeated – but empty – privilege claims: first producing (on May 9) a total of 20 unprivileged emails that JP Morgan had adamantly claimed were privileged, and then, nearly a month later, turning over eight more, even though it had insisted for two months that each of them was privileged.

JP Morgan's Opposition does not and could not suggest that any of these 28 emails is – or ever was – privileged. (In fact, JP Morgan describes them (at 9) as "emails that *nobody* contends are subject to attorney-client privilege.) And the undisputed record disposes of JP Morgan's claim (at 4) that it produced these 28 emails "promptly upon determining that they could properly be produced."[4] Rather, the record shows that JP Morgan attorneys with full knowledge of the facts repeatedly assured a federal enforcement agency, over a period of more than two months, that 28 non-privileged emails were privileged.

JP Morgan asks the Court (Opp. at 7-9) to ignore this history. But as Judge Kollar-Kotelly correctly pointed out in *Veiga*, and as everyone knows: credibility matters.

---

[2]     *Veiga*, 746 F. Supp. 2d at 43-44.

[3]     JP Morgan's lead counsel in this proceeding, Ms. Roberts, had no role whatsoever in the events between April and June.

[4]     Enforcement provided the Court, in the Exhibits to the Petition, with a complete record of the relevant communications with JP Morgan. JP Morgan has not suggested that this record is in any way inaccurate or incomplete.

In this Reply, we first set forth the facts relevant to the credibility of JP Morgan's privilege claims. We then show that JP Morgan's current privilege claims are the same as those it improperly made about unprivileged documents, that it has failed to submit competent evidence about essential elements of its claims, and that the privilege claims now before the Court are inconsistent with controlling law and deficient on their face.

## I.   JP MORGAN REPEATEDLY AND DELIBERATELY INSISTED THAT UNPRIVILEGED EMAILS WERE PRIVILEGED

JP Morgan's Opposition seeks to create the impression that it was difficult for the company to determine whether the 53 emails requested by Enforcement were privileged, but that when it managed to do so, it "promptly" turned over the emails. That is untrue, as we show in detail here.

The process started on April 2, 2012, when Enforcement asked JP Morgan why it had redacted 18 non-attorney emails produced a few weeks before.[5] **When printed out, these 18 emails fill only five pages, most of which are blank space.** (*See* Exhibit 8.)

Using software such as Concordance and the Bates numbers shown on the emails, a paralegal or associate could quickly locate unredacted copies of the emails in JP Morgan's production files. A law firm partner (or in-house attorney) could then review the emails in a few minutes.

Enforcement gave JP Morgan nine days to accomplish this task.

On April 11, 2012, an attorney representing JP Morgan assured Enforcement that each of the emails that Enforcement had asked about on April 2 was privileged:

---

[5]     Enforcement sought additional emails on April 13, 2012. For simplicity, we focus in the text on the emails sought on April 2. The parallel history of the emails sought on April 13 is shown in Exhibit 5 and summarized in note 7 below.

From: Krupka, Catherine [mailto:Catherine.Krupka@sutherland.com]
Sent: Wednesday, April 11, 2012 5:34 PM
To: Thomas Olson; Konieczny, Alexandra
Cc: Vivian Chum; Donna Lovitt; Fleischer, Jason J; Raisler, Kenneth M.; Scherman, William S
Subject: RE: UPDATE: Request for production of unredacted versions of unprivileged emails (THIRD of THREE requests)

Dear Tom:

Counsel for JPMorgan have reviewed the redacted emails you reference below.  The content is privileged, so the emails are appropriately redacted.  Thanks.

Catherine Krupka
SUTHERLAND
1275 Pennsylvania Avenue, NW
Washington, DC 20004-2415
Email: catherine.krupka@sutherland.com
Phone: 202.383.0248
Cell: 202 494 2818

Since this email from JP Morgan provided no explanation (beyond "privileged") for the company's redactions of non-attorney emails, Enforcement asked again.  The next day, the same attorney (copying lawyers at two other law firms) again assured Enforcement that the emails "are protected by the attorney-client privilege" and that JP Morgan "will not be producing them":

From: Krupka, Catherine [mailto:Catherine.Krupka@sutherland.com]
Sent: Thursday, April 12, 2012 5:30 PM
To: Thomas Olson; Konieczny, Alexandra
Cc: Vivian Chum; Donna Lovitt; Jason.Fleischer@skadden.com; raislerk@sullcrom.com; William.Scherman@skadden.com
Subject: Re: UPDATE: Request for production of unredacted versions of unprivileged emails (THIRD of THREE requests)

Dear Tom

We believe that the redacted portions of the emails you have requested are protected by the attorney-client privilege and therefore will not be producing them. Should Enforcement elect to allege that JPMorgan has not complied with the law regarding privilege, we will address those arguments at the appropriate time and in the proper forum.

Thanks

Having gotten no explanation whatsoever for JP Morgan's privilege claims, Enforcement served a subpoena for these emails on April 18, 2012.  The next week, on April 26, JP Morgan sent Enforcement a four-page letter and attached a two-page privilege log.  Two attorneys representing JP Morgan specifically and repeatedly assured Enforcement that each of the requested emails was privileged:

* * * *

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

1440 NEW YORK AVENUE, N.W.

WASHINGTON, D.C. 20005-2111

(202) 371-7000

http://www.skadden.com

FIRM/AFFILIATE OFFICES

BOSTON
CHICAGO
HOUSTON
LOS ANGELES
NEW YORK
NEWARK
PALO ALTO
WILMINGTON

BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
PARIS
SINGAPORE
SYDNEY
TOKYO
TORONTO

April 26, 2012

**VIA EMAIL**

Mr. Tom Olson
Federal Energy Regulatory Commission
888 First Street, N.E.
Washington, DC 20426

Re:     *In re Make-Whole Payments and Related Bidding Practices,*
        Docket No. IN11-8-000

Dear Mr. Olson:

JP Morgan Ventures Energy Corporation ("JPMVEC") is in receipt of and has reviewed the Subpoena *Duces Tecum* issued by the Office of Enforcement on April 18, 2012 (the "Subpoena").  The Subpoena seeks production of 16 documents in two requests ("Request 1" and "Request 2," respectively) listed in Attachment B of the Subpoena.

JPMVEC objects to Request 1 and part of Request 2 as compliance would violate the attorney-client privilege.  As counsel for JPMVEC previously notified you, the redacted portions of the sixteen emails or email chains sought by Request 1 and Request 2 are subject to the attorney-client privilege as described further below.[1]  With respect to the non-objectionable

* * * *

With respect to Items 1-7 and 9-15, the redacted portions of each email and email chain are communications among employees and counsel of JPMVEC and its subsidiaries and affiliates who have certain responsibility for the subject matter of the investigations by the Commission, the Midwest ISO and/or the California ISO. The redacted portions of each email and email chain are communications relaying or conveying the legal advice of counsel, requesting the legal advice of counsel, discussing the legal advice of counsel and/or providing information to counsel necessary for the provision of legal advice relating to the investigations by the Commission, the Midwest ISO and/or the California ISO. The redacted portions of each

each email and email chain were intended to be and remain confidential. The redacted portions of Items 1-7 and 9-15 are therefore subject to and protected by the attorney-client privilege.

\* \* \* \*

impasse.[3]  At first, we believed that Enforcement Staff's use of "sidebars" mischaracterized the nature of the communications—as discussed above. The communications were not, as Enforcement Staff implies, discussions among non-lawyers, *of non-privileged material*, on the same email chain as privileged communications with attorneys.[4]  Thus, our previous answers on this point were meant to reassure Enforcement Staff that the communications in Items 1-16 were in fact discussions of privileged material to which the attorney-client privilege applied, and that the documents were not discoverable.

\* \* \* \*

Sincerely,

*[signature: William S. Scherman]*

William S. Scherman
Jason J. Fleischer
Skadden, Arps, Slate, Meagher
& Flom LLP
1440 New York Ave., N.W.
Washington, DC 20005-2111
(202) 371-7060

Catherine M. Krupka
Sutherland Asbill & Brennan LLP
1275 Pennsylvania Ave., N.W.
Washington, DC  20004-2415
(202) 383-0248

*Counsel for JP Morgan Chase & Co.*

On May 1, 2012, the same two attorneys sent another letter to Enforcement asserting that each of the emails was privileged:

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

1440 NEW YORK AVENUE, N.W.

WASHINGTON, D.C.  20005-2111

(202) 371-7000

http://www.skadden.com

FIRM/AFFILIATE OFFICES
———
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
NEW YORK
NEWARK
PALO ALTO
WILMINGTON
———
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
PARIS
SINGAPORE
SYDNEY
TOKYO
TORONTO

May 1, 2012

**VIA EMAIL**

Mr. Tom Olson
Federal Energy Regulatory Commission
888 First Street, N.E.
Washington, DC 20426

Re:     *In re Make-Whole Payments and Related Bidding Practices*,
        Docket No. IN11-8-000

Dear Tom,

We write in response to your email dated April 27, 2012 concerning our April 26, 2012 response to the April 18, 2012 Subpoena for unredacted versions of certain documents that JPMorgan Ventures Energy Corp. (JPMVEC) has deemed protected by the attorney-client

\* \* \* \*

stands as an independent communication is inaccurate."). The descriptions we provided in the privilege log apply to each and every redacted email within each chain, all of which are protected by the attorney-client privilege.

\* \* \* \*

Sincerely,

William S. Scherman
Jason J. Fleischer
Skadden, Arps, Slate, Meagher
& Flom LLP
1440 New York Ave., N.W.
Washington, DC 20005-2111
(202) 371-7060

Catherine M. Krupka
Sutherland Asbill & Brennan LLP
1275 Pennsylvania Ave., N.W.
Washington, DC  20004-2415
(202) 383-0248

*Counsel for JP Morgan Chase & Co.*

On May 2, 2012, an attorney representing JP Morgan sent an email stating the company's "clear[] position" that all of the emails "are protected by the attorney-client privilege as a matter of law" (Exh. 5 at 39):

> We have clearly stated our position that the so-called "side bar" emails (a characterization we disagree with) you request are protected by the attorney-client privilege as a matter of law. We have also clearly stated our position that it is appropriate to list emails in the same email chain on a privilege log as a single entry where, as here, the same description and privilege claim applies to each and every email in that chain. It would be unduly burdensome if we were to list each email separately and the entries for each email in every chain would be virtually identical. We are willing to discuss this position and approach on our call.

On May 7, 2012, the parties met and conferred by phone about the dispute after Enforcement made clear it would seek this Court's aid. The call did not resolve the matter. During the call, one of the attorneys representing JP Morgan told Enforcement that while she understood Enforcement's skepticism, she was "not anxious" about any of the privilege claims. Olson Decl., ¶ 13. [6]

On May 9, JP Morgan turned over unredacted copies of six of the emails that Enforcement had requested on April 2. As to the rest, JP Morgan provided a new log that set forth detailed justifications for why the emails were supposedly privileged. Exh. 5 at 52-61.

---

[6]     On page 8 of its Opposition, JP Morgan attempts to excuse its repeated assertion of privilege in unprivileged emails by claiming it was concerned about a waiver of privilege of all documents on the same "subject matter." JP Morgan also claims that Enforcement staff "rebuffed" a request to discuss that topic.

In fact, the very first time JP Morgan asked Enforcement to agree not to claim a subject matter waiver (on May 7), Enforcement immediately agreed. *See* Exh. 5 at 45-46. JP Morgan could have asked for this at any time from April 2 on, and Enforcement would have immediately agreed when asked. In any event, a supposed worry about subject matter waiver does not explain why JP Morgan repeatedly claimed that *these emails themselves* were privileged.

JP Morgan's claim of a supposed "rebuff" relates to a one-day period (from Wednesday, May 2 to Thursday, May 3) when Enforcement proposed to continue conferring in writing rather than by phone. On May 3, Enforcement agreed to confer by phone and the parties did so on May 7.

Finally, on June 4, JP Morgan turned over four more of the emails that Enforcement had sought on April 2 and for which JP Morgan had provided detailed privilege claims on May 9.

To summarize:

| Date | Event |
| --- | --- |
| April 2, 2012 | Enforcement asks why 18 non-attorney emails are redacted |
| April 11, 2012 | Law firm partner assures Enforcement that all 18 emails are privileged |
| April 12, 2012 | Law firm partner again tells Enforcement that all 18 emails are privileged |
| April 26, 2012 | Law firm partners send Enforcement four-page letter and two-page privilege log asserting that each of the 18 emails is privileged |
| May 1, 2012 | Law firm partners send letter to Enforcement stating that "each and every redacted email" is privileged, along with revised privilege log purporting to justify privilege claims |
| May 2, 2012 | Law firm partner sends email to Enforcement stating that all of the requested emails "are protected by the attorney-client privilege as a matter of law" |
| May 7, 2012 | Law firm partner assures Enforcement during meet-and-confer that all of the emails are privileged |
| May 9, 2012 | Facing prospect of review by this Court, JP Morgan releases six of the emails and provides detailed privilege justifications for the rest |
| June 4, 2012 | JP Morgan releases four additional emails requested on April 2, for each of which it had provided detailed privilege justifications on May 9 |

That is, as to the 18 emails sought by Enforcement on April 2, JP Morgan now concedes that 10 are unprivileged. As to six of these admittedly unprivileged emails, JP Morgan told Enforcement six times (on April 11, April 12, April 26,

May 1, May 2, and May 7) that the emails were privileged.  As to four of the unprivileged emails, JP Morgan assured (and reassured) Enforcement a total of seven times (on April 11, April 12, April 26, May 1, May 2, May 7, and May 9) that the emails were privileged.[7]

Knowing all this, JP Morgan nevertheless tells the Court:   "Once [JP Morgan] determined that the materials it had retained were *not* subject to a valid claim of privilege, it promptly produced them."  Opp. at 4.  The facts just described show that is not true.

## II.   JP MORGAN'S PRIVILEGE CLAIMS BEFORE THE COURT ARE FATALLY DEFECTIVE

### A.   The Privilege Claims JP Morgan Now Advances Are the Same as Those It Made About Unprivileged Emails

The record shows that JP Morgan has made privilege claims virtually identical to those it now asks the Court to accept – but about documents that no one could possibly view as privileged.  JP Morgan's "specious claims" to a federal enforcement agency about these emails, made despite an express legal obligation to be truthful and candid in communications with the agency, necessarily "cast[] doubt" on the virtually identical claims before the Court.  *In re Veiga*, 746 F. Supp. 2d at 44.

At the heart of this issue are the detailed "privilege logs" that JP Morgan provided to Enforcement on May 9, 2012 (reprinted in Exh. 5 at pp. 52-61).  In those logs, JP Morgan for the first time provided email-by-email justifications for JP Morgan's privilege claims.  (JP Morgan had previously produced two logs that

---

[7]      As mentioned above, Enforcement asked JP Morgan for additional emails on April 13, 2012.  JP Morgan now admits that 13 of these emails are unprivileged.  Respondent told Enforcement either four or five times that each of the 13 emails was privileged.

improperly addressed privilege only in email chains as a whole.)[8]  JP Morgan's outside counsel created the logs to explain the company's privilege claims in response to formal subpoenas for the 53 emails.  The logs look like this:

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Item No. | Document Date | Bates No. | Document Type | Top Email Author(s) | Top Email Addressee(s) | Top Email Copyee(s) | Additional Chain Author(s) and Recipient(s) | Subject Matter | Privilege(s) |
| 17 | March 11, 2011 - March 12, 2011 | JPM-173497 | Email Chain | Blythe Masters | Francis Dunleavy | | Armand Nakkab; Diane Genova*; Rob Cauthen; Paul Tramonte; Stephen Greenleaf; Paul Posoli; Catherine Krupka* | Email chain between Business, Compliance, Counsel and Outside Counsel relaying and discussing legal advice of Outside Counsel and requesting and providing information to Counsel and Outside Counsel for the provision of legal advice regarding alternate bid structures. [See Items 10, 18-22] | Attorney-Client Communications |
| 17a | March 12, 2011 | | Email | Blythe Masters | Francis Dunleavy | | | Email between corporate employees with subject matter responsibility relaying and discussing legal advice of Outside Counsel regarding alternate bid structures. | Attorney-Client Communications |
| 18 | March 11, 2011 - March 14, 2011 | JPM-172593 | Email Chain | Francis Dunleavy | Blythe Masters | | Armand Nakkab; Diane Genova*; Rob Cauthen; Paul Tramonte; Stephen Greenleaf; Paul Posoli; Catherine Krupka* | Email chain between Business, Compliance, Counsel and Outside Counsel relaying and discussing legal advice of Outside Counsel and requesting and providing information to Counsel and Outside Counsel for the provision of legal advice regarding alternate bid structures. [See Items 10, 17, 19-22] | Attorney-Client Communications |
| 18a | March 14, 2011 | | Email | Francis Dunleavy | Blythe Masters | | | Email between corporate employees with subject matter responsibility relaying and discussing legal advice of Outside Counsel regarding alternate bid structures. [See Item No. 10e] | Attorney-Client Communications |

*In re Make-Whole Payments and Related Bidding Practices, Docket No. IN11-08*
RESPONSE TO FERC LITIGATION STAFF "ATTACHMENT C" REQUEST
VAUGHN INDEX

For example, in one of its May 9 privilege logs, JP Morgan assured Enforcement that a redacted March 11, 2011 email between Steven Greenleaf and Francis Dunleavy "discuss[ed] legal advice of Outside Counsel and request[ed] and provid[ed] information to Counsel and Outside Counsel for the provision of legal advice . . . ."  JP Morgan Priv. Log (May 9, 2012), reprinted in Exhibit 5 at 53.

Because JP Morgan decided to produce this "privileged" document on June 4, we now know what JP Morgan claimed was a "discuss[ion]" of "legal advice" and a "request . . . for the provision of legal advice" – the single word "no":

---

[8]     "Nor may the proponent assert blanket or categorical claims of privilege; rather, the law 'requires a showing that the privilege applies to *each communication* for which it is asserted.'"  *In re Veiga*, 746 F. Supp. 2d at 33 (quoting *United States v. Legal Servs. for N. Y. C.*, 249 F.3d 1077, 1082 (D.C. Cir. 2001)) (emphasis added); *see In re Veiga*, 746 F. Supp. 2d at 39 ("Respondent must adduce competent evidence establishing each of the essential elements necessary to support a claim of privilege for *each communication*, and he must do so to a reasonable certainty.") (emphasis added).

----- Original Message -----
From: Greenleaf, Stephen T
To: Dunleavy, Francis
Sent: Fri Mar 11 17:16:42 2011
Subject: RE: Privileged and Confidential - CAISO update

No.

Greenleaf's "privileged" use of the word "no" came in response to an email from Dunleavy, which JP Morgan said in the May 9 log was privileged because it supposedly "relay[ed] and discuss[ed] legal advice of Outside Counsel . . . regarding alternate bid structures."  Exhibit 5 at 54.  We now know that this "privileged" email – which JP Morgan produced on June 4 and now admits was never privileged – did nothing of the kind:

-----Original Message-----
From: Dunleavy, Francis
Sent: Friday, March 11, 2011 2:15 PM
To: Masters, Blythe; Nakkab, Armand X; Posoli, Paul
Cc: Greenleaf, Stephen T; Tramonte, Paul; 'Catherine.Krupka@sutherland.com'; Genova, Diane M.
Subject: Re: Privileged and Confidential - CAISO update

Do we have a copy of the emergency tariff revision expected to be filed today?

After getting the answer "no" to his question, Dunleavy sent another "privileged" email to Greenleaf.  In the May 9 privilege logs, JP Morgan assured Enforcement that this email was protected by the attorney-client privilege because it "relay[ed] and discuss[ed] legal advice of Outside Counsel regarding alternate bid structures."  Exhibit 5 at 53.  JP Morgan later revealed (on June 4, *see* Exh. 3 at 9) that this email did not do those things and is, in fact, unprivileged:

| From: | Dunleavy, Francis <Francis.Dunleavy@jpmorgan.com> |
| Sent: | Friday, March 11, 2011 8:16 PM |
| To: | Greenleaf, Stephen T <stephen.t.greenleaf@jpmorgan.com> |
| Subject: | Re: Privileged and Confidential - CAISO update |

Plse call ASAP

6462809542

Other entries in JP Morgan's May 9 privilege logs assure Enforcement that two May 19, 2011 emails between Francis Dunleavy and Paul Posoli are "discussing legal advice regarding meeting with FERC." (Exh. 5 at 59-60.) That assurance was untrue, as became clear when JP Morgan produced the emails on June 4. Here's Dunleavy's "privileged" note "discussing legal advice":

**From:** Dunleavy, Francis
**To:** Masters, Blythe; Nakkab, Armand X; Posoli, Paul
**Cc:** Genova, Diane M.; Johnson, Gregory J
**Sent:** Thu May 19 16:05:14 2011
**Subject:** Re: FERC meeting attendees list

Great job compliance.

Terrific outcome.

And here is Posoli's "privileged" response, also "discussing legal advice":

| **From:** | Posoli, Paul <Paul.Posoli@jpmorgan.com> |
| **Sent:** | Thursday, May 19, 2011 4:08 PM |
| **To:** | Dunleavy, Francis <Francis.Dunleavy@jpmorgan.com> |
| **Subject:** | Re: FERC meeting attendees list |

Are you being sarcastic?

Finally, the May 9 privilege logs told Enforcement that Blythe Masters sent a privileged email to Francis Dunleavy on March 14, 2011 in which she "relay[ed] and discuss[ed] legal advice of Outside Counsel regarding alternate bid structures." (Exh. 5 at 58.) A few weeks later, on June 4, JP Morgan unveiled this "privileged" email by a non-lawyer "relaying legal advice":

----- Original Message -----
From: Masters, Blythe
To: Dunleavy, Francis
Sent: Mon Mar 14 12:36:10 2011
Subject: Re: Privileged and Confidential - CAISO update

That's ridiculous.

Unlike the Court, the Office of Enforcement cannot yet see the remaining emails that JP Morgan contends are "privileged."[9]  We respectfully suggest, however, that the Court's *in camera* review should be guided by the principle laid out by Judge Kollar-Kotelly:  parties that advance specious privilege claims have earned skeptical scrutiny of their other privilege claims.[10]

## B.   JP Morgan Does Not Dispute the Controlling Legal Principles Set Forth in the Opening Brief

JP Morgan contends (at 9) that Enforcement has advanced "a cramped theory of attorney-client privilege that is without precedent or support."  In fact, Enforcement's opening brief provided the Court with 10 pages of legal authorities about how courts – and in particular the D.C. Circuit and this Court – address privilege claims.  Opening Br. at 25-34.  JP Morgan does not contend that any of the cases cited by Enforcement have been overruled or that Enforcement has cited, quoted, or discussed any of them inaccurately.

Among other things, Enforcement showed that:

▪     courts in the D.C. Circuit follow the multipart test for privilege set forth in *United States v. United Shoe Machinery Corp.*, 89 F. Supp. 357, 358-59 (D. Mass. 1950) (Opening Br. at 25);

---

[9]     JP Morgan argues that Enforcement is "[u]nable to explain why the particular twenty-five Emails that it seeks" – emails, that is, that JP Morgan has refused to show Enforcement – "should be disclosed."   Opp. at 4.  The burden of proof is on JP Morgan, not on Enforcement.  And to state the obvious, Enforcement cannot comment in detail on documents it has never seen.

[10]    JP Morgan suggests (Opp. at 5 and n.3) that the Commission did something improper by filing this action publicly.  In fact, it has been standard procedure for decades for federal agencies to file subpoena enforcement proceedings publicly.  *See FTC v. Ken Roberts Co.*, 276 F.3d 583 (D.C. Cir. 2001); *Peoples Natural Gas Co. v. Fed. Power Comm'n*, 127 F.2d 153 (D.C. Cir. 1942) (enforcing subpoena issued by FERC's predecessor agency); *SEC v. Lines Overseas Mgmt.*, 2005 U.S. Dist. LEXIS 39425 (D.D.C. Jan. 7, 2005).  And Petitioner has complied with all applicable laws and regulations in doing so.

■     JP Morgan bears the burden of proof on each element of its privilege claims (Opening Br. at 26);

■     JP Morgan must prove each element "with reasonable certainty" (Opening Br. at 33);

■     attorney-client privilege is narrowly construed (Opening Br. at 26);

■     a "cc" to a lawyer, without more, does not mean that the author was seeking legal advice (Opening Br. at 27);

■     under D.C. Circuit law, "legal advice" is not automatically privileged, but instead is protected only to the extent it is based on a confidential communication from a client to an attorney (Opening Br. at 29-31);

■     the test for "confidentiality" is strict:  the communication must be sent "with the intention that it *not be known by anyone other than the lawyer*."  *Evan v. Atwood*, 177 F.R.D. 1, 5 (D.D.C. 1997) (emphasis added).

### C.    JP Morgan Has Not Provided Competent Evidence to Support Its Privilege Claims

In her July 5 Order to Show Cause, Judge Kollar-Kotelly directed JP Morgan to "present declarations or other competent evidence to support each of the essential elements of any claimed privilege," citing the *Veiga*, *Alexander*, and *Zelaya* cases to guide JP Morgan's preparation of its filing.

These cases illustrate the rigorous standards applied by this Court in evaluating privilege claims:  in each case, the Court rejected the party's factual presentation as inadequate.  In *Zelaya*, the party claiming privilege provided no sworn statements at all, and therefore no competent evidence.  682 F. Supp. 2d at 38.  In *Veiga*, the party claiming privilege (and work product protection) submitted a declaration by an individual in a position to have personal knowledge (Mr. Wray) about at least some of the documents in question.  But because the declaration

suffered from "glaring" defects, the Court rejected the privilege and work product claims. *Veiga*, 746 F. Supp. 2d at 40-41.

Finally, in *Alexander*, the party claiming privilege submitted a declaration from Thomas McLarty, whose own documents were sought. McLarty had personal knowledge about, for example, "his motive" in making certain notations on documents, although he did not describe his motive sufficiently to support a privilege claim. 192 F.R.D. at 46. But in both *Veiga* and *Alexander*, as in any privilege case, the critical first step was a declaration by an individual with personal knowledge of the relevant facts.[11]

Here, JP Morgan's filing fails that test. The only declaration it has submitted is by an attorney, Catherine Krupka, who lacks the necessary personal knowledge to testify about the mental state of their authors of the emails.[12]

Under the law applied in this Circuit, a document is protected by the attorney-client privilege only if (among other things) the "primar[y]" purpose of the communication is to "secur[e]" a legal opinion, legal services, or assistance in a legal proceeding. *In re Sealed Case*, 737 F.2d 94, 98-99 (D.C. Cir. 1984) (quoting *United Shoe*, 89 F. Supp. at 358-59). Thus, the issue of *purpose*, or *intent*, is at the heart of a privilege claim.

---

[11]   *See United States v. Blackman*, 72 F.3d 1418 (9th Cir. 1995) (individual claiming privilege provided declaration based on first-hand knowledge).

In *Alexander*, the Court found, based on its own examination of documents and not on the party's factual submission, that certain documents "indicate on their face that they were given to attorneys for the purpose of securing legal advice and list the attorneys to whom the document was sent." 192 F.R.D. at 46. If the documents here showed those facts on their face, JP Morgan would have so advised the Court in its Opposition.

[12]   JP Morgan has refused to provide Enforcement with even a redacted copy of the Krupka Declaration, making it impossible for Enforcement to comment on the unprivileged factual assertions in it. But the undisputed record shows that Krupka lacks the personal knowledge that would be needed for JP Morgan to meet its burden of proof.

Krupka did not write any of the emails and therefore does not have personal knowledge of the intent with which they were written.  Rather, the emails were written by Blythe Masters, Francis Dunleavy, Paul Posoli, Andrew Sunderman, Armand Nakkab, Robert O'Connell, and Paul Tramonte.  JP Morgan has not submitted declarations from any of these people, who are the only ones competent to provide testimony about their own purposes in drafting the emails.  JP Morgan has thus failed the fundamental requirement of competent evidence, namely that the witness have "personal knowledge of the matter."  Fed. R. Evid. 602.

Nor does Krupka have personal knowledge of myriad other factual claims made by JP Morgan (Opp. at 15-21):  for example, (a) that the author of an email was "relaying" or "conveying" or "discussing" or "comment[ing] [on]" or "referencing" something a lawyer had said (e.g., Opp. at 15, 16, 17, 18, 19) as opposed to expressing the author's own views, or (b) that the author was describing a *communication* to a lawyer, rather than *facts* that the author knew independently (which are not privileged, even if the individual also discussed those facts with a lawyer).  *See Upjohn Co. v. United States*, 449 U.S. 383, 395-96 (1981) ("[The] protection of the privilege extends only to communications and not to facts.  A fact is one thing and a communication concerning that fact is an entirely different thing.") (citation omitted).

In short, the Krupka Declaration cannot establish either the intent with which an email was written or any of the many other factual assertions made by JP Morgan that are uniquely within the knowledge of the emails' authors.  As a result, unless the text of the emails themselves demonstrates these matters with "reasonable certainty" (which JP Morgan would have told the Court if true), Respondent has not met its burden of proof and the Court should deny all of Respondent's privilege claims.

### D.    None of the Emails Here Was Sent to An Attorney
### for the Primary Purpose of Seeking Legal Advice

Under the law of this Circuit, a document is protected by the attorney-client privilege only if (among other things) (1) it was sent to a lawyer or his or her subordinate, and (2) the primary purpose of the communication was to secure a legal opinion, legal services, or assistance in a legal proceeding. *In re Sealed Case*, 737 F.2d 94, 98-99 (D.C. Cir. 1984).

On their face, none of the 25 emails at issue here appears to meet these tests. Of the 25 emails, 12 were not sent to any attorney, paralegal, or legal secretary (whether as a "to," "cc," or "bcc" recipient), which means that the first prong is not satisfied. And as to the 13 emails cc'ed to an attorney, the fact of the "cc" (under settled law discussed *supra*) does not show that the primary purpose of the email was to seek legal advice. *See* pp. 23-25 *supra*. Hence the second prong does not appear to be satisfied for any of the 25 emails, as the Court's *in camera* review should quickly reveal.[13] *See Alexander,* 192 F.R.D. at 46 (rejecting privilege claim when "[t]here is no showing that these documents were made by McLarty for the purpose of securing legal advice").

In one narrow circumstance, courts in this Circuit have protected communications that do not technically meet these standards:  when one non-

---

[13]    Of the 25 emails, a total of one (JPM-189162, sent by Dunleavy on July 15, 2011) contains a hint of a possible request for legal advice:  "I ask Compliance and Legal [remainder redacted]."  But Dunleavy did not send the email to any attorney (even though he clearly knows how to do so), so it is difficult to see how JP Morgan could demonstrate with "reasonable certainty" that his primary purpose was to seek legal advice, as opposed to compliance or business advice – or simply publicly available information.  And when a recipient (Ari Nakkab) forwarded the email, he included lawyers only as cc's, making it still more difficult to see how the "primary purpose" of either email was to obtain legal advice.

attorney has sent another a legal memorandum that contains client confidences.[14] But JP Morgan cites no case in which any court in this Circuit has ever found privilege in non-attorney commentary relating in some way to legal advice, such as JP Morgan's sweeping claim of privilege in emails about "potential commercial responses to the investigation based on the legal advice provided."  Opp. at 16.

As pointed out in Enforcement's Opening Brief, a court in the Eastern District of Virginia has flatly rejected the idea that communications among non-attorneys can ever be privileged as "reflect[ing] legal advice."  *ePlus Inc. v. Lawson Software, Inc.*, 2012 U.S. Dist. LEXIS 21636, at *18 (E.D. Va. Feb. 21, 2012).  JP Morgan's claims that statements such as "that's ridiculous" are privileged because they "relate to legal advice" demonstrate the wisdom of that approach.

**D.    Although JP Morgan's Privilege Claims Would Fail in Any Jurisdiction, JP Morgan Asks The Court to Apply Legal Principles Directly Contrary to the Law of this Circuit**

During April and May 2012, JP Morgan told Enforcement that many emails were privileged because they "discussed" (or "relayed" or "referred to" or "related to") to legal advice.  For example, JP Morgan improperly claimed privilege in an email in which Blythe Master said "that's ridiculous," assuring Enforcement that the email was "relaying and discussing legal advice."

JP Morgan's remaining privilege claims (Opp. at 15-21) are filled with similar assertions.  Although the verbiage varies, JP Morgan's overall theme is that if a non-lawyer email says anything that relates in any way to something once discussed with a lawyer, the email is privileged "discussion of legal advice."  Since

---

[14]    *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 863 (D.C. Cir. 1980); *Covington & Burling v. Food & Nutrition Serv. of U.S. Dep't of Agric.*, 744 F. Supp. 314, 323 (D.D.C. 1990); *In re PEPCO Emp't Litig.*, Civ. A. No. 86-0603, 1992 WL 310781 (D.D.C. Oct. 2, 1992).

privilege claims are narrowly construed (Opening Br. at 25-26), JP Morgan vast expansion of attorney-client privilege cannot be reconciled with settled law.

In any event, any derivative claim relating to "legal advice" would require that the legal advice itself be privileged.  And on that score, JP Morgan urges the Court to apply a legal rule directly contrary to the law of this Circuit.

Specifically, JP Morgan tells the Court that "*independent of the content of any client communication*, legal advice given to the client should remain confidential."  Opp. at 9 (quoting *United States v. Amerada Hess Corp.*, 619 F.2d 980, 986 (3d Cir. 1980)) (emphasis added).  That is, JP Morgan urges this Court to apply Third Circuit precedent on this point.[15]  But the law in this Circuit is directly to the contrary.  In fact, the D.C. Circuit case (*Mead Data Central*) that JP Morgan quotes (at 9) immediately before the Third Circuit case makes that clear – but JP Morgan does not mention that portion of the D.C. Circuit case.  *See Mead Data Cent., Inc. v. U.S. Dep't of Air Force,* 566 F.2d 242, 254 (D.C. Cir. 1977) ("the attorney-client privilege does extend to a confidential communication from an attorney to a client, *but only if that communication is based on confidential information provided by the client*") (emphasis added); *see In re Sealed Case,* 737 F.2d at 99 ("Communications from attorney to client are shielded *if they rest on confidential information obtained from the client*") (emphasis added).

JP Morgan ignores these D.C. Circuit precedents throughout its Opposition, urging the Court to give blanket protection to all "legal advice."[16]  By failing even

---

[15]     JP Morgan also urges the Court to rely on several other decisions from jurisdictions that do not appear to apply the same standards to privilege claims as those applied by the D.C. Circuit and this Court.  *See* Opp. at 9-10, 11, 12-13, 14.

[16]     Legal discussion in Opposition:  Opp. at 1 ("Respondent has the right to decline to provide communications that . . . repeat . . . or discuss the advice of its attorneys"); *id.* at 6 ("the Emails . . . provide, repeat, or discuss legal advice"); *id.* ("These emails are privileged because they . . . provide, repeat, or discuss legal advice"); *id.* at 13 ("The

to claim that legal advice was based on client confidences, much less to establish that to a "reasonable certainty," JP Morgan has failed to establish an essential element of its privilege claims.[17]  And even if it had done so, JP Morgan's privilege claims would fail for the many other reasons discussed here and in our Opening Brief.

JP Morgan's privilege claims also assume, contrary to the law of this Circuit, that any "legal directive" from counsel is privileged.[18]  But directives from

---

Emails Sought by the Commission Are Privileged Because They . . . Provide, Repeat, or Discuss Legal Advice").

Discussion of specific emails in Opposition:  Opp. at 16 (email concerns responses to investigation "in light of the legal advice provided"); *id.* ("email concerns the proper response to prior privileged communications, in which attorneys provided advice regarding the investigation. . . . This email thus reflects discussions between two business executives regarding legal advice rendered by Respondent's attorneys"); *id.* ("This email is privileged as a discussion between key employees regarding legal advice"); *id.* at 17 ("email references . . . legal advice . . . It is privileged because it . . . discusses legal advice"); *id*. at 18 (email "conveys advice of counsel"); *id.* at 19 ("the email provides commentary on legal advice provided by outside counsel"); *id*. at 20 ("[t]he email discusses how to conduct business in light of . . . advice provided by legal counsel . . . the email is therefore privileged as . . . discussion of legal advice"); *id*. at 21 ("email relates to the operation of the business in light of . . . legal advice provided by counsel").

JP Morgan has waived its privilege claim for the email in Respondent's Exhibit A (a Nov. 5, 2010 email from O'Connell to Tramonte).  JP Morgan says (at 17) that the *attachment* to this email is privileged, but says nothing about the *email itself*.  But in this Petition, Enforcement seeks only the email, not the attachment.  Opening Br. at 32 n.21. JP Morgan has waived its claims in the second email in Exhibit H for the same reason.

[17]   A party in one of the cases cited by Judge Kollar-Kotelly did the same thing, and was chastised for doing so.  *See Zelaya v. Unicco Serv. Co*. 682 F. Supp. 2d 28, 39 (D.D.C. 2010) ("In combination with the defendants' attempt to satisfy an attorney-client privilege standard set forth by the Fifth Circuit . . . rather than the more stringent governing law for this circuit, . . .defendants have taken their proverbial one bite at the apple and lost.").

[18]   *E.g.*, Opp. at 19 ("outside counsel directed . . . compliance personnel to collect information"), *id.* at 21 (mentioning "document retention" and stating that "the emails are privileged because they expressly relate to a legal directive from counsel").

counsel based on requests from *outside the company* – such as document retention requests or data requests from the Commission – are not based on a confidential client communication, and are therefore not privileged under the law of this Circuit. *In re Sealed Case*, 737 F.2d at 99 ("when an attorney conveys to his client facts acquired from other persons or sources, those facts are not privileged.") (citations omitted).

**F.   If the Court Were To Allow Privilege Claims Based on "Discussions" Among Non-Attorneys "Relating To" Legal Advice, It Would Need to Exercise Great Caution in Doing So**

Even if JP Morgan had submitted competent evidence about the mental state of the authors of the emails relating to "legal advice," followed controlling law in drafting its privilege claims about those emails, and corrected the many other defects in its claims, the Court would need to proceed with extreme care before upholding them. As the Court of Appeals has stressed, "exceptions" to disclosure of relevant evidence "are not lightly created nor expansively construed, for they are in derogation of the search for truth.'" *In re Sealed Case*, 121 F.3d 729, 749 (D.C. Cir. 1997) (citation omitted). And JP Morgan's conduct to date (with "legal advice" privilege claims for "that's ridiculous" and "call me ASAP") shows how easily a party can improperly claim that a communication "relates to legal advice."

Although Enforcement cannot now see the remaining redacted emails, JP Morgan's current privilege claims illustrate the same problem. Consider, for example, these soft, amorphous claims for emails relating in some way to "legal advice": Opp. at 16 (email "concerns potential commercial responses to the investigation, in light of the legal advice provided"); *id.* at 17 ("the email references that legal advice and discusses how best to respond to that advice"); *id.* at 19 ("[t]he email is privileged because it pertains to earlier, privileged communications with counsel"); *id.* at 20 ("The email discusses how to conduct

business in light of the investigation and advice provided by legal counsel in that regard"); *id.* at 21 ("Th[e] email relates to the operation of the business in light of the investigation and legal advice provided by counsel in connection with the investigation").  These justifications are vague, unbounded, and – as the record shows – easily employed to conceal non-privileged documents.

The Court should reject them as inconsistent with the careful, and appropriately narrow, approach that this Circuit takes to privilege claims.

### G.  JP Morgan Claims that Emails Are Privileged Because They Say "Privileged" or "Confidential," When the Record Shows Those Legends Have No Significance

JP Morgan claims that eight of the 25 emails are privileged because they have the words "Privileged," "Confidential," or both in the subject line.  Opp. at 17 (one email in Exhibit A); *id.* at 18 (two emails in Exhibit E); *id.* at 20 (one email in Exhibit J and four in Exhibit K).  In fact, the record shows that the presence of "Privileged" or "Confidential" legends shows nothing about whether an email is in fact privileged, in part because people often leave an old subject line on later emails in a chain.  Exhibit 9 has 12 examples just from the formerly "privileged" emails produced by JP Morgan on May 9 and June 4.  Here is one of them:

| From: | Posoli, Paul <Paul.Posoli@jpmorgan.com> |
| Sent: | Friday, March 11, 2011 4:24 PM |
| To: | Dunleavy, Francis <Francis.Dunleavy@jpmorgan.com> |
| Subject: | FW: Privileged and Confidential - CAISO update |

will you give her the details

### H.  JP Morgan's Privilege Claims Based on cc's to Attorneys Are Contrary to Controlling Case Law

As JP Morgan does not dispute, a "cc" to an attorney does not mean that an email is privileged.  *See Zelaya v. UNICCO Serv. Co.*, 682 F. Supp. 2d 28, 39

(D.D.C. 2010) ("[C]arbon copying some emails to in-house counsel will not provide the basis for attaching the attorney-client privilege."), *citing Minebea Co. v. Papst*, 228 F.R.D. 13, 21 (D.D.C. 2005) ("A corporation cannot be permitted to insulate its files from discovery simply by sending a 'cc' to in-house counsel."); Opening Br. at 27-28 (collecting cases).  Nor does JP Morgan dispute that one ordinarily sends an email "to" someone – rather than listing them as a "cc" or "bcc" – to ask them to do something.

Under the law of this Circuit, attorney-client privilege protects only confidential communications from clients to their attorneys "for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding."  *Alexander*, 186 F.R.D. at 106 (quoting *In re Sealed Case*, 737 F.2d at 98-99).  That is the burden that JP Morgan must meet here.

In theory, it would be possible – though unusual – for a party to meet that burden as to an email in which a lawyer was merely cc'ed.  But to conclude that the author's primary purpose was to ask the cc'ed lawyer for legal advice, *there would need to be something more than the mere fact of cc'ing the lawyer*.  For example, the text of the email could theoretically say something like "Ms. CC'ed Attorney, please give me your advice about X."  But as the case law makes clear, the bare fact of cc'ing an attorney is *not* enough to support a privilege claim.

The logic behind that rule is illustrated by many of the emails that JP Morgan has unredacted, which show that employees routinely "cc" attorneys on completely unprivileged emails.  Exhibit 10 has many examples; here is one, with the name of the cc'd lawyer highlighted in blue:

From: Masters, Blythe
Sent: Monday, May 16, 2011 1:32 PM
To: Posoli, Paul; Nakkab, Armand X; Dunleavy, Francis; Basci, Patricia
Cc: Genova, Diane M.; Tramonte, Paul; de Marothy, Anne; Pritchard, Marisa C
Subject: Re: FERC Meeting

I absolutely cannot do that date. It is my daughter's graduation.
Ari - pls work directly with Pat on my availability. We need to get this resolved.

In its Opposition, JP Morgan ignores the controlling law cited above.   That is, even though it is clear that a "cc" to an attorney is not enough to show that an email sought legal advice, JP Morgan claims, as to 11 of the 25 emails, that they reflect a request for legal advice based on the mere fact that an attorney is cc'ed. These 11 legally invalid privilege claims are documented in Exhibit 10.

In an effort to mask that it is relying only on cc's to attorneys, JP Morgan uses phrases like "implicit invitation," "so that they may provide legal advice," "providing . . . with information necessary to facilitate . . . provision of legal advice," and the like.  Opp. at 15-21.  But elaborate language cannot change the bottom line:  JP Morgan is asking the Court to accept that a cc: to an attorney, in and of itself, means the email is seeking legal advice.  Because that contention is foreclosed by controlling case law, the Court should reject all of JP Morgan's privilege claims based on cc's to attorneys.

## Conclusion

Over the course of more than two months, JP Morgan repeatedly and adamantly claimed that dozens of unprivileged emails were privileged.  JP Morgan now asks the Court to protect other emails based on the same claims it made for the unprivileged emails, based on incompetent evidence.  In addition, JP Morgan's justifications for withholding the emails are deficient as a matter of law for the many other reasons described above.  (For the Court's convenience in performing its *in camera* inspection, we provide in Exhibit 7 a detailed, email-by-email summary of the deficiencies in JP Morgan's privilege claims.)

Respectfully submitted,

NORMAN C. BAY
(DC Bar No. 421522)
Director
Office of Enforcement

LARRY D. GASTEIGER
Deputy Director
Office of Enforcement

LARRY PARKINSON
(DC Bar No. 387470)
Director
Division of Investigations

DAVID APPLEBAUM
(DC Bar No. 474161)
Deputy Director
Division of Investigations

_____/s/_____

THOMAS P. OLSON
(DC Bar No. 389220)
VIVIAN W. CHUM
Attorneys[19]
Division of Investigations
Office of Enforcement
Federal Energy Regulatory
Commission
888 First Street, N.E.
Washington, D.C.  20426
thomas.olson@ferc.gov
(202) 502-6278

Dated:  July 17, 2012

---

[19]    The Office of Enforcement gratefully acknowledges the assistance of Eden Schiffmann, a law student currently serving as an intern in the Office.